**Jerry R. WILSON and the National Education Association, Appellants,**

v.

**PLEASANT HILL SCHOOL DISTRICT R–III et al., Appellees.**

**No. 71–1440.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1972.

Decided Aug. 4, 1972.

Rehearing Denied Sept. 6, 1972.

Irving Achtenberg, Kansas City, Mo., for appellants.

Martin Anderson, Kansas City, Mo., for appellees.

Before GIBSON, HEANEY and ROSS, Circuit Judges.

**GIBSON, Circuit Judge.**

This is an appeal by the plaintiff Jerry Wilson, a teacher, joined by the National Education Association, from an adverse judgment rendered by the trial court in favor of defendant Pleasant Hill School District. The action was brought pursuant to 42 U.S.C. §§ 1981 and 1983, alleging that the failure of the school district to renew the plaintiff's teaching contract for the school year 1970–1971 was a violation of plaintiff's First Amendment rights and a denial of due process. After a trial to the court, the Honorable Elmo B. Hunter, the district court, 334 F.Supp. 1197, found that the plaintiff had failed to carry his burden of proof that the failure to renew his contract was based upon any exercise of protected First Amendment rights and held that under the case of Freeman v. Gould Special School District, 405 F.2d 1153 (8th Cir.), cert. denied, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (1969), plaintiff, who was a non-tenured teacher in the Pleasant Hill School District, had no right to a due process hearing prior to the school board's failure to renew his contract.

Plaintiff Wilson had been employed by the defendant school district, a public school district in the state of Missouri, for six years as an industrial arts teacher. During the period of plaintiff's employment, the state of Missouri did not have a teacher tenure law, and thus plaintiff's contracts with the school system were for one-year terms only.[1] On April 14, 1970, plaintiff received a letter from the Board of Education advising him that he would not be re-employed by the school district for the 1970–1971 school year. The reasons given for this action were: (1) "Effectiveness as a teacher is declining rather than improving," and (2) "Employment was not recommended by the school administration." Following receipt of this notice, plaintiff wrote to the school board

---

1. Missouri passed a teacher tenure law which became effective July 1, 1970. See Mo.Rev.Stat. §§ 168.102 et seq. Since the failure to renew plaintiff's contract occurred on April 14, 1970, this act was not yet effective and thus has no bearing on this case.

and requested that he be given specific reasons for the failure to renew his contract, notice and an opportunity to be heard by the board. Although plaintiff was invited to attend a board meeting, he was not given any specific notification of the charges against him nor was he given an opportunity to answer such charges. The defendant school board admits that the plaintiff was not given a due process hearing.

■ The recent cases of Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), dispose of plaintiff's claim that he was entitled to a due process hearing on the board's failure to rehire him. The Supreme Court held in those cases that teachers employed by public schools on yearly contracts without tenure have no right to a hearing when the school system fails to rehire them.

■■ In the instant case, the plaintiff claims that since he had been hired by the school board every year for six years and had received no complaints about his performance, he had a "reasonable expectancy" of reemployment, and therefore was entitled to a hearing. In Perry v. Sindermann, the Supreme Court recognized that even though a teacher's contract might not give him any specific rights to a hearing upon a failure to rehire him, there might be an unwritten "common law" in his employment situation that gave him that right. (408 U.S. 602, 92 S.Ct. p. 2700). However, the Court specifically noted with respect to this issue that, "If it is the law of Texas that a teacher in the re-

spondent's position has no contractual or other claim to job tenure, the respondent's claim would be defeated." (Id. at n. 7, 408 U.S. at p. 602, 92 S.Ct. at p. 2700.)

It is clear that in the state of Missouri, plaintiff had no contractual or other claim to the right to a hearing as to the reasons for his non-reemployment. Williams v. School District of Springfield, 447 S.W.2d 256 (Mo.1969). In the Williams case, the plaintiff was not rehired by the defendant school board for the final year before she reached the mandatory retirement age, and as a consequence she suffered a decrease in her retirement benefits; the school board refused to give her a hearing or any reasons for the failure to rehire her. The Missouri Supreme Court held that under Missouri law:

" * * * [P]laintiff was not entitled to a written statement of reasons why she was not going to be reemployed or to any hearing before the Board of Education. She had no statutory, contractual or independent right to a written statement of reasons and a hearing regarding the reasons for the failure of the Board to rehire her." 447 S.W.2d at 262.[2]

Thus we must conclude that the board's action in this case did not deny plaintiff any due process rights.

■ As developed at the trial, the facts relating to plaintiff's First Amendment claim are as follows. Plaintiff's position is that he was discharged either solely or partly because of his activities as chairman of the Community Teacher's Association (CTA) welfare committee.[3] The chief evidence pre-

---

2. In the Williams case, the Missouri Supreme Court correctly recognized that the school board could not dismiss the plaintiff teacher for constitutionally impermissible reasons, and remanded the case for a hearing on her claim that she had not been rehired because of an article she had published in a scholarly journal, noting that those grounds would have been a violation of her right of free speech.

3. There was some evidence introduced at the trial that in the 1968–1969 school

year plaintiff had devoted five class periods in his shop class to a discussion of evolution, and that the administration had objected to this on the grounds that it was not part of the curriculum for that course. The school superintendent testified, and the plaintiff concedes, that this incident played no part in the decision not to rehire him. Thus no First Amendment questions are raised with respect to this incident.

sented by plaintiff in support of this contention was that in the year in question the school board failed to rehire three CTA officers, the president with four years service in the district, the secretary with ten years service, and plaintiff, that the school superintendent opposed all seven of the CTA welfare proposals (such as "extra pay for extra duty") on the basis that there was no money for them, and that neither the superintendent nor assistant superintendent joined the CTA until after the instant suit had been filed.

In response to the above evidence, the school board introduced evidence intended to show that the administration was not hostile to the CTA and that there were other reasons independent of his CTA activities which were responsible for the decision not to rehire plaintiff.

With respect to the CTA's welfare proposals, although the proposals for the 1969-1970 school year were not adopted because of a lack of funds, six of the CTA's nine welfare proposals for the 1968-1969 school year had been adopted. The superintendent and assistant superintendent testified that they had not previously joined the CTA because they were ineligible to be voting members and that they joined as soon as the CTA's rules permitted. Furthermore, the administration officials all testified that they supported the activities of the CTA and that participation in the CTA played no part whatsoever in their decision not to recommend his re-employment. Various teachers in the school system testified that they had found the administration cooperative and encouraging in the CTA activities. One teacher testified that she had been a member of the salary committee, that the administration had given them information as to the salary scales, budget and financial condition of the district, and as a result recommendations were made for increasing the salary schedule which were adopted. Another teacher testified that she had become "very disgusted with the way things were going" in the CTA and had talked to the school superintendent about not rejoining; he told her that she should belong. Plaintiff himself testified that he had requested and the school board had granted him permission to be away from school on teacher association activities for seven full days with pay in 1969-1970.

The school board offered evidence that plaintiff's non-reemployment was for reasons unrelated to plaintiff's First Amendment activity. The trial court found that the school board's evidence sufficiently negatived any inference that the refusal to rehire plaintiff was based on his teacher association activities, and that therefore plaintiff had failed to carry his burden of proof that the failure to renew his contract was based on protected First Amendment activity. Viewing the record before us as a whole, we cannot say that the trial court's findings in this respect are clearly erroneous.

The judgment is affirmed.